KELLY v. HUNTER, Warden.

REVELS v. HUNTER, Warden.

YATES v. HUNTER, Warden.

Nos. 1190, 1191, 1194.

United States District Court
D. Kansas, First Division.

Nov. 5, 1948.

William H. Biddle, of Leavenworth, Kan., for petitioners.

Lester Luther, U. S. Atty. and Eugene Davis, Asst. U. S. Atty., both of Topeka, Kan., and Lt. Colonel Nicholas R. Voorhis, J.A.G.D., of Washington, D.C. (Captain E. E. Woods, United States Navy, Acting Judge Advocate General of Navy, of Washington, D. C., on the brief in Docket No. 1194 H. C.), for respondents.

MELLOTT, District Judge.

The petitioner in each case assails the validity of his detention in the United States Penitentiary at Leavenworth, Kansas. Writs of habeas corpus having been issued and it appearing that the issue raised in each case is essentially the same, the cases were consolidated for hearing. The basic facts are not in issue.

Kelly, a soldier on active duty in the Army of the United States, after trial before a general court-martial on November 21, 1946, was sentenced "to be dishonorably discharged the service, to forfeit all pay * * * and to be confined at hard labor, at such place as the reviewing authority may direct, for ten (10) years." Following appellate review, Article of War

50½, Title 10 U.S.C.A. § 1522, the sentence was approved and ordered to be executed. By General Court-Martial Orders No. 138, Headquarters New York Port of Embarkation, dated 17 March, 1947, "the Federal Reformatory, Chillicothe, Ohio, or elsewhere as the Secretary of War may direct, * * * [was] designated as the place of confinement." On May 20, 1947, purportedly "in accordance with the authority contained in Title 18, Sections 744b and 753f [now §§ 4082, 4083], U.S.Code, the Attorney General by the Director of the Bureau of Prisons," transferred Kelly to the United States Penitentiary, Terre Haute, Indiana. On June 4, 1947, pursuant to the same statutes and by the same authority, Kelly was transferred to the United States Penitentiary, Leavenworth, Kansas, where he is now serving the ten year sentence.

Revels, a soldier on active duty in the Army of the United States in the Philippine Islands, was twice convicted by courts-martial and sentenced "to be dishonorably discharged the service, to forfeit all pay * * * and to be confined at hard labor at such place as the reviewing authority" should direct, the first—February 9, 1946—being for a period of eight years, reduced by the reviewing authority to five years and the second—July 12, 1946—being for a period of six years. Following appellate review sentence in the first case was promulgated by General Court-Martial Orders No. 1300, Headquarters United States Army Forces Western Pacific, dated May 21, 1946, "the Federal Reformatory, El Reno, Oklahoma, * * * [being] designated as the place of confinement." Following appellate review in the second case, sentence was promulgated 13 February 1947, by General Court-Martial Orders No. 33, Headquarters Philippines-Ryukyus Command, "U. S. Penitentiary, McNeil Island, Washington, or elsewhere as the Secretary of War may direct, * * * [being] designated as the place of confinement * * *." So much of the aggregate of the two sentences—11 years—as exceeds 7½ years was remitted by direction of the President on May 21, 1947. On November 18, 1946, pursuant to a letter dated November 12, 1946 from the Director, Federal Bureau of Prisons, Headquarters Sixth Army changed the "place of confinement designated in the court-martial order * * * to the United States Penitentiary, Leavenworth, Kansas, by direction of the Secretary of War." Revels is now serving the 7½ year sentence at the penitentiary so designated.

Yates, while serving as a seaman second class in the United States Navy, was convicted by a general court-martial convened by order of the Commandant, U. S. Naval Operating Base, Manila, Subic, Philippine Islands on a charge of desertion in time of war and upon four specifications of a charge of robbery. He was sentenced on November 8, 1945 "to be reduced to the rating of apprentice seaman, to be confined for a period of twenty (20) years, to be dishonorably discharged * * * and to suffer all the other accessories of said sentence as prescribed by Section 622, Naval Courts and Boards." Accessories include hard labor and loss of pay while in confinement. The proceedings, findings and sentence were approved by the convening authority November 15, 1945, 34 U.S.C.A. § 1200, Art. 53, but the period of confinement, with corresponding accessories, was reduced to 18 years. "The U. S. Naval Disciplinary Barracks, Terminal Island (San Pedro), California * * * [was] designated as the place of confinement."[1] Subsequently Yates was transferred to the U. S. Penitentiary, McNeil Island, Washington, purportedly under the authority of Article 7 of the Articles for the Government of the Navy, the transfer having been ordered by the Director, Corrective Services of the Navy Department, "For Closer Custody." (Order J. Maginnis, Capt. U. S. N. (a) BuPers

---

[1] According to the brief of the respondent filed herein, but not established by the record, Yates was again brought to trial before a general court-martial on December 20, 1945 and convicted of breaking arrest and absence from station without leave. This seems to have resulted in a sentence of 18 months, later reduced to 12 months, the U. S. Naval Disciplinary Barracks, Terminal Island (San Pedro), California, being designated as the place of confinement.

ltr P 13–10, Pers.—5212–AJA, dated 4 January 1945.), Later and on December, 3, 1947, "in accordance with the authority contained in Title 18, Sections 744b and 753f [now §§ 4082, 4083] U.S.Code, the Attorney General by the Director of the Bureau of Prisons," transferred Yates to the United States Penitentiary, Leavenworth, Kansas, where he is now serving the 18 year—possibly 19 year[1]—sentence. .

The issue in each case seems to be: Is the petitioner legally confined in a *penitentiary* of the United States? Each petitioner places his chief reliance upon the concluding proviso of Article of War 42, Title 10 U.S.C.A. § 1513,[2] although Article 7 of the Articles for the Government of the Navy, 34 U.S.C.A. § 1200, Article 7,[3] seems to be applicable to Yates. However that may be, each petitioner, as the court understands it, is assailing the validity of his detention in any place other than the place designated by the court-martial which pronounced the sentence under which he is being held.

It is of interest to note that no change was made in Article 42, supra, by the revisions of the Articles of War contained in Title II of Public Law 759, ch. 625, 80th Congress, 2nd Session, approved June 24, 1948. Title 10 U.S.C.A. § 1452 is likewise extant; and, while it recognizes that persons committing offenses such as those committed by these petitioners, "may be confined at hard labor, during the entire period of confinement so adjudged, in any United States * * * penitentiary, or in any other penitentiary directly or indirectly under the jurisdiction of the United States * * *," it also provides that "* * * all persons sentenced to confinement upon conviction by courts-martial or other military tribunals who are not confined in a penitentiary may be confined and detained in the United States Disciplinary Barracks." Thus there is at least a modicum of substance to petitioners' contentions that they should be confined in the type of institution to which they were sentenced. Chapter XIX of the "Manual For

---

[1] According to the brief of the respondent filed herein, but not established by the record, Yates was again brought to trial before a general court-martial on December 20, 1945 and convicted of breaking arrest and absence from station without leave. This seems to have resulted in a sentence of 18 months, later reduced to 12 months, the U. S. Naval Disciplinary Barracks, Terminal Island (San Pedro), California, being designated as the place of confinement.

[2] "Places of confinement; when lawful (article 42). Except for desertion in time of war, repeated desertion in time of peace, and mutiny, no person shall under the sentence of a court-martial be punished by confinement in a penitentiary unless an act or omission of which he is convicted is recognized as an offense of a civil nature and so punishable by penitentiary confinement for more than one year by some statute of the United States, of general application within the continental United States, excepting section 468 of Title 18, or by the law of the District of Columbia; or by way of commutation of a death sentence, and unless, also, the period of confinement authorized and adjudged by such court-martial is more than one year: Provided, That when a sentence of confinement is adjudged by a court-martial upon conviction of two or more acts or omissions any one of which is punishable under these articles by con-

finement in a penitentiary, the entire sentence of confinement may be executed in a penitentiary: Provided further, That penitentiary confinement hereby authorized may be served in any penitentiary directly or indirectly under the jurisdiction of the United States: Provided further, That persons sentenced to dishonorable discharge and to confinement not in a penitentiary shall be confined in the United States Disciplinary Barracks or elsewhere as the Secretary of War or the reviewing authority may direct, but not in a penitentiary. (June 4, 1920, c. 227, subchapter II, § 1, 41 Stat. 795.)"

[3] "Imprisonment in lieu of death. A naval court-martial may adjudge the punishment of imprisonment for life, or for a stated term, at hard labor, in any case where it is authorized to adjudge the punishment of death; and such sentences of imprisonment and hard labor may be carried into execution in any prison or penitentiary under the control of the United States, or which the United States may be allowed, by the legislature of any State, to use; and persons so imprisoned in the prison or penitentiary of any State or Territory shall be subject, in all respects, to the same discipline and treatment as convicts sentenced by the courts of the State or Territory in which the same may be situated. (R.S. § 1624, art. 7.)"

Courts-Martial, U. S. Army, 1928 (corrected to April 20, 1943)" also lends some support to that view; for it contemplates that the court-martial will designate a penitentiary as the place of confinement in all proper cases and the reviewing authorities are required to do so "in every case when such action is authorized, unless it appears that the holding of the prisoner in association with misdemeanants and military offenders will not be to the detriment of such misdemeanants and military offenders, and that the purposes of punishment do not demand penitentiary confinement." Sec. 90, Manual for Courts-Martial, U. S. Army. In approaching the question to be decided, however, it is appropriate to have in mind that each of the present petitioners committed, and was convicted of having committed, one or more of the offenses punishable under Article 42 by penitentiary confinement and in none was the "holding", above referred to, made. The expressed " * * * policy of the War Department to separate, so far as practicable, general prisoners convicted of offenses punishable by penitentiary confinement from general prisoners convicted of purely military offenses * * *," (Chapter XIX, supra) therefore, may not be carried out if petitioners are returned to the Disciplinary Barracks or Reformatory to which originally sentenced.

But the question is not whether petitioners, as a matter of policy or grace, should, or should not, be confined in an institution of the penitentiary type. It is: Has the Congress, by subsequent legislation, directly or indirectly, removed the proscription in the concluding sentence of Article of War 42 against confining in a penitentiary persons sentenced by Army courts-martial "to dishonorable discharge and to confinement not in a penitentiary"?

Counsel for the respondent, with commendable thoroughness and care, have brought before the court numerous inter-department and intra-bureau communications pertaining to the custody, safe-keeping and transfer of military prisoners. Collectively, they represent a studied effort on the part of responsible officials in the War Department, the Department of the Army, the Justice Department and the Bureau of Prisons, continuing at least since early in 1940, to perform their respective duties strictly in accordance with law, without violating any of the rights of prisoners or casting upon the Government any unwarranted or unnecessary expense in handling them. Those officials have collaborated, inter alia, in the formulation of regulations under which prisoners under 31 years of age who were sentenced to a term of confinement not exceeding 10 years should be committed to one of several named reformatories, rather than to a penitentiary; they have modified such regulations to make them applicable only to prisoners 25 years of age and younger; and they have joined in carrying out a plan under which the Bureau of Prisons is given a part in designating the place of service of sentence. The genesis of the various regulations and agreements seems to have been the expressed desire of the Bureau of Prisons "to make a designation of institution on all military cases in order that * * * [it] could place the young men who do not have excessive sentences [but who have been sentenced to confinement in a penitentiary] in the reformatories without going through the expense and waste of time of having them handled by two institutions." Loveland letter, July 11, 1940. Throughout the correspondence it is obvious that all who have had a part in the program have been animated by a desire "that the rehabilitation of military offenders * * * be promoted and more effective use [be] made of the diversified facilities now available in the Federal correctional institutions." Director's letter August 2, 1940.

■ But notwithstanding what has been said and despite rulings by responsible government officers possibly to the contrary,[4] this court feels that it must hold

---

4 See Exhibits A and I. Also office memorandum by the assistant to the Attorney General, dated November 8, 1945, holding that the acceptance of military prisoners by the Bureau of Prisons is mandatory. The pertinency of the last-mentioned document to the question now before the court is at least debatable.

that the Attorney General and the Director of Prisons may not transfer to penitentiaries general prisoners sentenced by Army courts-martial in whose cases a Disciplinary Barracks or a Reformatory has been previously designated as the place of confinement. In reaching this conclusion the court is not unmindful of the fact that it is somewhat anomalous; for under Section 753 et seq. [now § 4041 et seq.] of Title 18 U.S.C.A. those officers have authority to designate the places of confinement of persons convicted of offenses against the United States and "to order the transfer of any person held under authority of any United States statute from one institution to another if in his judgment it shall be for the well-being of the prisoner or relieve overcrowded or unhealthful conditions * * *." While the quoted language seems to be all-inclusive, the quotation is from section 753f, which, by section 753a [now § 4042] is specifically made non-applicable "to military penal or military reformatory institutions or persons confined therein." Passing such doubt as may exist whether the language last quoted prevents the Attorney General from transferring military prisoners from one institution to a similar institution—and clearly such transfers may be made, see Green v. Schilder, 10 Cir., 162 F.2d 803—the statute relied upon by the petitioners Kelly and Revels, viz., Article of War 42, supra, seems clearly to support their present contention.

█ Upon brief learned counsel for the respondent state: "Because of the statutory right and power of the Attorney General to transfer prisoners from reformatories or correctional institutions to penitentiaries (18 U.S.C. 753f, 831) the Army has consistently required that any military prisoner who, by original sentence, is sentenced to confinement in a federal institution must have been convicted of an offense and have received a sentence authorizing confinement in a penitentiary under Article of War 42." In support of that view is cited, inter alia, memo of H. D. H. to General Green, dated 15 October 1945, received in evidence in these proceedings.

Sections 753f and 831 [now § 4082], referred to in the quotation, undoubtedly give the Attorney General authority to transfer prisoners committed by the United States Courts from reformatories to penitentiaries and vice versa; but neither section, directly or indirectly, refers to or amends Article of War 42. The memorandum referred to expresses the view that: "Transfer to *penitentiaries* of general prisoners in whose cases a disciplinary barracks has been designated as the place of confinement would involve an increase in punishment and would not be legally authorized, although penitentiary confinement may have been originally authorized for the offenses of which the prisoners were convicted." (Italics appearing.)

Section 94 of the Manual for Courts-Martial, U. S. Army, is cited in the memorandum. It provides: "The authority which has designated the place of confinement, or higher authority, may change the place of confinement of any prisoner under the jurisdiction of such authority; but when a military prison or post has been designated as the place of confinement of a prisoner, the place of confinement can not thereafter be changed to a penitentiary under the same sentence."

Green v. Schilder, Warden, supra, although the precise question now before the court was not involved, clearly supports the conclusion which has been suggested. The issue was whether a prisoner sentenced to the Disciplinary Barracks could legally be transferred to a Federal Reformatory. The court held that such transfer could be made by the Secretary of War or reviewing authority because a reformatory "is not a penitentiary within the intent and meaning of the 42nd article of war." 162 F.2d loc. cit. 804. It recognized, however, the proscription against imprisonment "in a penitentiary." See also Johnson v. Hiatt, D.C., 71 F.Supp. 865, affirmed 163 F.2d 1018.

The announced policy of the Congress contained in the act of May 27, 1930, c. 339, 46 Stat. 390, as expressed in Section 7, Title 18 U.S.C.A. § 907 [now § 4081], is, of course, entitled to respectful consideration. It should be borne in mind, however, that the purpose of the legislation was primarily to provide additional institutions for confinement of male prisoners; and there is

nothing to indicate that the Congress intended to amend or modify Article of War 42.

This court is not unmindful of the importance of its decision, suggested by the statement of counsel for the respondent upon brief that "there are currently confined in one or another of the United States Penitentiaries about 370 prisoners convicted by army courts-martial whose original court-martial orders designated a federal, penal or correctional institution, other than a penitentiary as the place of confinement." But relief, in the studied judgment of the court, may be granted only by the Congress.

Under the facts recited at the outset of this opinion only petitioner Kelly is entitled to any relief at the hands of this court. He, as the court construes the applicable law, should be confined in the Federal Reformatory at Chillicothe, Ohio or at some other reformatory or Disciplinary Barracks, as directed by the Secretary of War. Of course the Secretary may, and properly should, collaborate with the Attorney General and the Director of Prisons in the event he desires to designate a reformatory as the place of confinement; but he may not, in the studied judgment of this court, designate a penitentiary as the place of confinement nor may the Attorney General or the Director of Prisons transfer Kelly to a penitentiary. The court retains jurisdiction to make effective the views just expressed; but feels that it appropriately may, and it does, defer for a period of 60 days, the making of any order.

Petitioners Revels and Yates are legally confined in the United States Penitentiary at Leavenworth. Revels, having been sentenced to the United States Penitentiary at McNeil Island, Washington, could have been transferred in accordance with Title 18 U.S.C.A. Sections 744b and 753f, or as the Secretary of War should direct. In the abundance of caution the responsible officers of the War Department (Department of the Army) and the Director of the Bureau of Prisons acted jointly in making the transfer. It clearly was made in accordance with law. Yates is being held under R.S. § 1624, Art. 7, shown in footnote 3, supra, and Article of War

42 has no applicability to him. His sentence is being "carried into execution in * * * [a] prison or penitentiary under the control of the United States * * *." The authority contained in Title 18 U.S. C.A. Sections 744b and 753f, seems to be ample to allow the Attorney General to make the transfer. Cf. Stroud v. Johnston, 139 F.2d 171, certiorari denied 321 U.S. 796, 64 S.Ct. 846, 88 L.Ed. 1085.

In Dockets No. 1191 H. C. and 1194 H. C., orders are this date being entered quashing the writs of habeas corpus heretofore issued, remanding the petitioners to the custody of the respondent warden and dismissing the petitions.